Filed 6/10/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| HECTOR CASILLAS, et al., | B302442 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC670058) |
| v. | |
| BERKSHIRE HATHAWAY HOMESTATE INSURANCE COMPANY, et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, David S. Cunningham III, Judge. Affirmed.

Green & Noblin, Robert S. Green, James Robert Noblin, and Emrah M. Sumer; Law Offices of Mark Ravis & Associates, Mark Ravis and David Martin, for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Deborah L. Stein, Jeremy S. Smith and Wesley Sze, for Defendants and Respondents Berkshire Hathaway Homestate Insurance Company and Cypress Insurance Company.

Proskauer Rose, Lary Alan Rappaport and Jessica M. Griffith, for Defendant and Respondent Zenith Insurance Company.

Manning & Kass, Ellrod, Ramirez, Trester and Dennis B. Kass, for Defendant and Respondent Oliver Glover.

Freeman Mathis & Gary and Stephen M. Caine, for Defendant and Respondent William Reynolds.

---

## INTRODUCTION

The elements of the tort of trespass to chattels include "injury to the plaintiff's personal property or legal interest therein." (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348, 1350-1351 (*Intel*).) In this opinion, we hold appellants Hector Casillas and Adela Gonzalez failed to plead facts satisfying this element in alleging that respondents -- three insurance companies and two investigators -- copied appellants' electronic litigation files from a third-party computer system, in violation of appellants' interests in privacy and confidentiality. We conclude appellants failed to

2

allege any actionable injury because: (1) they did not allege damage or disruption to the computer system, as required by *Intel*; and (2) in any event, they did not allege injury to the copied files or their asserted property interests therein.

According to appellants, respondents Berkshire Hathaway Homestate Insurance Company (Berkshire), Cypress Insurance Company (Cypress), Zenith Insurance Company (Zenith), William Reynolds, and Oliver Glover conspired to "hack" a third-party computer system. At the direction of the insurance-company respondents, Reynolds and Glover allegedly copied thousands of electronic litigation files, which had been uploaded to the system by workers' compensation and personal injury attorneys and their clients (including appellants), and transmitted the copies to insurers and insurance defense law firms for use in litigation. Appellants first sued respondents in federal district court on various causes of action, including invasion of privacy. After abandoning their invasion-of-privacy claim, they added a claim of trespass to chattels, which the district court dismissed without addressing the merits.

Appellants then filed the instant trespass-to-chattels claim, to which respondents demurred. The trial court sustained respondents' demurrers, concluding appellants failed to state a trespass-to-chattels claim because, inter alia, they did not allege any damage or disruption to the computer system from which the files were copied, as the court concluded was required under *Intel*, *supra*, 30 Cal.4th 1342. The court granted appellants leave to amend their

complaint, but appellants declined to do so, instead electing to appeal the judgment subsequently entered on the demurrers.

On appeal, appellants contend the court erred in sustaining respondents' demurrers to their claim of trespass to chattels. As indicated above and explained in more detail below, we agree with the trial court that appellants failed to state a claim. Accordingly, we affirm.

## BACKGROUND

### A. Respondents' Copying of Electronic Files

We take the following facts from the allegations of appellants' complaint, which we must assume true on this appeal: HQSU Sign Up Services, Inc. owned the "'HQSU system,'" comprising computer servers, a database housed on those servers, and a website through which the database was accessible. Attorneys for workers' compensation and personal injury plaintiffs contracted with HQSU to provide administrative services for certain clients, including appellants. HQSU presented each new client with a blank in-take packet, in which the client entered "medical, financial and legal information." HQSU uploaded the completed packet to HQSU's database, in a file associated with the client's counsel. Counsel used HQSU's website to download the in-take packet, then created and uploaded "documents that would be typical in a litigation file, such as correspondence, memos to file, research memos, etc." As the client's case proceeded, the file was updated by counsel,

4

counsel's staff, and the client, all of whom could use HQSU's website to download or post comments on existing documents, and upload revised or additional documents. The website and file contained "password and privacy notifications," because the file was "intended" to be available only to counsel, counsel's staff, and the client, following verification of username and password.

Respondents conspired to "hack" the files on the HQSU system. At the direction of respondents Berkshire, Cypress, and Zenith, respondents Reynolds and Glover "repeatedly launched what are known as directory traversal attacks. A directory traversal attack is a[n] HTTP exploit allowing hackers to access restricted directories and execute commands outside of the web server's root directory." By means of these directory traversal attacks, conducted almost daily for 15 months, Reynolds and Glover copied approximately 33,000 litigation files, including appellants', from the HQSU system. They transmitted the copies to insurers and insurance defense law firms. Although the copying "was not done in connection with any particular litigation," certain copied documents were later used in defense of workers' compensation claims.

### B. Appellants' Claim of Trespass to Chattels

In 2015 and 2016, appellants separately filed complaints against respondents in federal district court, containing causes of action for, inter alia, invasion of privacy. Without specifically addressing the invasion-of-

privacy claim, the district court dismissed all of appellants' claims for failure to adequately allege standing to sue in federal court, and granted leave to amend. (*Casillas v. Berkshire Hathaway Homestate Cos.* (C.D.Cal. Aug. 22, 2016, No. CV 15-4763 AG (JEMx)) 2016 U.S.Dist.LEXIS 184127, at *6-*8.) Abandoning their invasion-of-privacy claim, appellants amended their federal complaints to include other claims, including a trespass-to-chattels claim under California law. The district court dismissed the complaints without addressing the merits of the trespass-to-chattels claim. (See *Casillas v. Berkshire Hathaway Homestate Cos.* (C.D.Cal. June 27, 2017, No. CV 15-04763 AG (JEMx)) 2017 U.S.Dist.LEXIS 99549, at *8-*12 [dismissing appellants' sole remaining federal law claim on the merits, and declining to exercise supplemental jurisdiction over state law claims], affd. (9th Cir. 2019) 770 Fed.Appx. 329.)

Soon thereafter (in July 2017), appellants filed the instant complaint, which contained a cause of action for trespass to chattels.[1] Appellants alleged respondents "intentionally interfered with Plaintiffs' information in their litigation files hosted by HQSU on its database and servers and the documents they, their counsel, and counsel's staff

---

[1]     We need not address the other cause of action contained in appellants' complaint, viz., a claim for violation of the Confidentiality of Medical Information Act, Civil Code section 56 et seq., to which the trial court also sustained a demurrer with leave to amend, as appellants raise no issue concerning it.

caused to be uploaded to the HQSU database and servers by obtaining that information from those files and those documents and then wrongfully using them for their own purposes." They further alleged they suffered a number of harms: (1) "Their personal property interest in the information in the files, the files themselves, the documents used to generate those files, and the documents contained in those files were violated when accessed by others not entitled to access them and then made available for use against them in a court of law or administrative claims process"; (2) "Their right to privacy, including the right to privacy enshrined in Article 1 of the California Constitution, was and continues to be violated"; and (3) "Their attorney-client and work product privileges for communications with their counsel in their workers' compensation proceeding, the first of which is a right personal to them, was breached."[2]

---

[2] Appellants alleged several other related harms based on respondents' obtaining the information in the copied files, including: (1) violation of their statutory rights to privacy of medical information; (2) undermining of their "right to assistance of counsel in civil matters," as well as their "faith in the integrity and fairness of the civil justice system"; and (3) unspecified costs incurred in taking steps to mitigate risks that the copied information might be used against them, including by "at least consider[ing]" settling their underlying litigation on unfavorable terms, and by taking unspecified protective measures against identity theft. We need not address these alleged harms, as appellants develop no argument concerning them.

7

Appellants sought compensatory damages and injunctive relief.

### *C. Judgment on Respondents' Demurrers*

In November 2017, respondents demurred to the complaint.[3]  Relying on *Intel*, *supra*, 30 Cal.4th 1342, respondents argued appellants failed to state a trespass-to-chattels claim because they did not allege any damage or disruption to the computer system from which the electronic files were copied.  Respondent Glover additionally argued that the claim failed because (1) the copied information was not property; and (2) appellants failed to allege any injury to their asserted property interests in the information, instead complaining of injury to their privacy interests.  In December 2017, appellants filed an opposition to the demurrers, and respondents filed replies (none of these briefs are in the record).  The trial court stayed the case pending resolution of appellants' appeal from the dismissal of their federal complaints; the stay was lifted in May 2019.

In July 2019, the court issued a tentative ruling sustaining the demurrers with leave to amend, and held a hearing.  Appellants conceded respondents had not damaged the HQSU system, corrupted the files they allegedly copied from the system, or impaired appellants' access to the files.

---

[3]     Respondents Reynolds and Glover each filed separate demurrers, while respondents Berkshire, Cypress, and Zenith filed a joint demurrer.

Appellants argued they nevertheless suffered actionable harm, viz., the "loss of privacy and confidentiality" caused by respondent's viewing and copying the files. They further argued *Intel* did not require them to allege damage or disruption to the HQSU system, because their claim concerned trespass to the files, not the system. Respondents' counsel maintained that appellants' failure to allege damage or disruption to the HQSU system was fatal under *Intel*.

Adopting its tentative ruling, the court concluded appellants had failed to state a claim of trespass to chattels. The court agreed with respondents that the claim failed under *Intel*: "[P]ursuant to *Intel*, a plaintiff alleging trespass to chattels based on unauthorized access to a computer system must allege damage or disruption to that computer system. Here, Plaintiffs have not done so." The court rejected appellants' attempt to distinguish *Intel*:

> "Plaintiffs argue that *Intel* does not control here, because the facts of *Intel* did not include unauthorized access to a computer system or downloading of files. . . . [¶] However, as Demurring Defendants note, the *Intel* court reached its holding by examining those cases involving robotic data collection, which *did* involve copying electronic information. *See, e.g.*, *eBay, Inc. v. Bidder's Edge, Inc.* (N.D. Cal. 2000) 100 F.Supp.2d 1058 [(*eBay*)]; *Register.com, Inc. v. Verio, Inc.* (S.D.N.Y. 2000) 126 F.Supp.2d 238 [(*Register*)]; *Ticketmaster Corp. v. Tickets.com,*

9

*Inc.* (C.D. Cal., Aug. 10, 2000, Case No. 99CV7654) 2000 WL 1887522 [(*Ticketmaster*)]. . . . [¶] Subsequent cases have applied *Intel* to instances of alleged hacking, similar to Plaintiffs' allegations here. *See, e.g.*, *Capitol Audio Access, Inc. v. Umemoio* (E.D. Cal. 2013) 980 F.Supp. 2d 1154, 1160 [(*Capitol Audio*)] (dismissing a trespass to chattel claim where the plaintiff alleged the defendant had accessed a password protected, proprietary database without authorization); *Vertkin v. Vertkin* (N.D. Cal. Dec. 6, 2007) 2007 WL 4287512, at *3 [(*Vertkin*)] (dismissing a trespass to chattel claim where the plaintiff alleged that the defendant had installed keystroke recording software onto the plaintiff's computer 'in order to obtain personal information' without authorization). [¶] None of Plaintiffs' authorities support the proposition that an actionable trespass to chattel claim exists when an alleged tortfeasor neither damages nor impairs a plaintiff's computer system."

The court sustained the demurrers with leave to amend.[4]

---

[4] As an additional ground for sustaining the demurrers to the trespass-to-chattels claim, the court concluded appellants failed to adequately allege they had any cognizable property interest in either the HQSU system or the information in the
*(Fn. is continued on the next page.)*

In August 2019, appellants filed notice that they declined to amend their complaint. They stipulated to entry of judgment on the demurrers, which they timely appealed.

## DISCUSSION

Appellants contend the trial court erred in sustaining respondents' demurrers to their cause of action for trespass to chattels. "'In reviewing the sufficiency of a complaint against a general demurrer, we . . . "treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed."'" (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 764.) "When, as here, a demurrer to a complaint is sustained with leave to amend and the plaintiff declines to amend the complaint, . . . we assume the complaint contained the strongest statement of the plaintiff's cause or causes of action. [Citation.] Thus, unlike when a demurrer is sustained without leave to amend, we determine only whether the plaintiff stated a cause of action, and not whether the plaintiff might be able to do so." (*Ibid.*) "The judgment of dismissal must be affirmed if the unamended

___

copied files. In defending the court's ruling on appeal, respondents argue that "[m]ost fundamentally," appellants failed to allege any *injury* to such a property interest. Because we agree, we need not address whether appellants adequately alleged they had such a property interest in the first instance.

complaint is objectionable on any ground raised by the demurrer." (Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 2021) Ch. 8-C ¶ 8:136.3e.) Below, we conclude the trespass-to-chattels claim was objectionable on a ground raised in the demurrers, viz., appellants' failure to allege any actionable injury to a property interest.

### A.    *Trespass to Chattels under* Intel

"[T]he trespass to chattels tort . . . may not, in California, be proved without evidence of an injury to the plaintiff's personal property or legal interest therein." (*Intel, supra,* 30 Cal.4th at 1348.) "In modern American law generally, '[t]respass [to chattels] remains as an occasional remedy for minor interferences, *resulting in some damage,* but not sufficiently serious or sufficiently important to amount to the greater tort' of conversion." (*Id.* at 1351.) "[I]njury to the personal property or the possessor's interest in it *is* an element of the action . . . ." (*Id.* at 1352.)

In *Intel,* our Supreme Court held this element was not satisfied in the absence of damage or disruption to the computer system allegedly trespassed against. (*Intel, supra,* 30 Cal.4th at 1347, 1352-1353.) There, Intel brought a trespass-to-chattels claim against former employee Hamidi who, on six occasions, had made unauthorized use of Intel's email system to send criticisms of its employment practices to numerous current employees. (*Id.* at 1346, 1348-1349.) Although Intel presented no evidence the messages caused

12

physical damage or functional disruption to its computer system, it presented uncontradicted evidence that staff time was spent attempting to block further messages, and that the messages' contents caused discussion among employees and managers.  (*Id.* at 1346, 1349.)  The trial court granted Intel summary judgment, and enjoined Hamidi from sending unsolicited emails on the system.  (*Id.* at 1350.)  The Court of Appeal affirmed, concluding the absence of injury to Intel's property was immaterial in light of Intel's showing that Hamidi's use of its property disrupted its business.  (*Ibid.*)  Our Supreme Court reversed.  (*Id.* at 1366.)  After reviewing prior decisions analyzing unauthorized electronic contact with computer systems as potential trespasses to chattels, the court concluded, "the tort does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning."  (*Id.* at 1347; see also *id.* at 1352-1353 [detailing absence of damage or impairment].)

In explaining that its holding was consistent with the aforementioned caselaw, the Supreme Court discussed three cases in which the electronic contact at issue consisted of "unauthorized robotic data collection" from websites: *eBay, supra,* 100 F.Supp.2d 1058; *Register, supra,* 126 F.Supp.2d 238; and *Ticketmaster, supra,* 2000 WL 1887522.  (*Intel, supra,* 30 Cal.4th at 1354-1357.)  Each case suggested that such data collection could constitute trespass to chattels only if it caused or threatened harm to the website's computer system, either by finding insufficient evidence of such harm

13

to support a trespass-to-chattels claim (*Ticketmaster*), or by granting injunctive relief in reliance on evidence that third-party repetition of the data collection would harm the websites' systems (*eBay* and *Register*). (See *Intel*, at 1354-1357.) Distinguishing the latter cases, our Supreme Court emphasized Intel had failed to show any appreciable effect on its computer system, or likelihood thereof. (*Intel*, at 1356-1357.)

Regarding Hamidi's messages' alleged disruptive effect on Intel's *business*, our Supreme Court concluded this effect was not the type of property harm actionable as trespass to chattels: "While unwelcome communications, electronic or otherwise, can cause a variety of injuries to economic relations, reputation and emotions, those interests are protected by other branches of tort law; in order to address them, we need not create a fiction of injury to the communication system. [¶] Nor may Intel appropriately assert a *property* interest in its employees' time. . . . Whatever interest Intel may have in preventing its employees from receiving disruptive communications, it is not an interest in personal property, and trespass to chattels is therefore not an action that will lie to protect it." (*Id.* at 1359.) By analogy to intrusive telephone calls, the court implied that trespass to chattels likewise would not lie to protect interests in privacy: "The consequential economic damage Intel claims to have suffered, i.e., loss of productivity caused by employees reading and reacting to Hamidi's messages and company efforts to block the

14

messages, is not an injury to the company's interest in its computers . . . any more than . . . the loss of privacy caused by an intrusive telephone call would be an injury to the recipient's telephone equipment." (*Intel*, *supra*, 30 Cal.4th at 1347; see also *id.* at 1361-1362 ["the contents of a telephone communication may cause a variety of injuries and may be the basis for a variety of tort actions (e.g., . . . invasion of privacy), but the injuries are not to an interest in property, . . . and the appropriate tort is not trespass"].)

### B.    Analysis

We agree with the trial court that appellants failed to state a claim of trespass to chattels. Appellants conceded respondents' alleged copying of electronic files from the HQSU system did not cause any damage or disruption to the system. As the trial court observed, "[P]ursuant to *Intel*, a plaintiff alleging trespass to chattels based on unauthorized access to a computer system must allege damage or disruption to that computer system. Here, Plaintiffs have not done so." (See *Intel*, *supra*, 30 Cal.4th at 1347, 1352-1353.)

For the same reasons given by the court, we reject appellants' attempt to distinguish *Intel* on the ground that there, defendant Hamidi did not copy electronic files. First, as noted, *Intel* explained that its holding was consistent with prior cases suggesting that robotic data collection from a website -- including the copying of electronic information -- could constitute trespass to chattels only if it caused or

15

threatened harm to the website's computer system. (*Intel*, *supra*, 30 Cal.4th at 1354-1357.) Second, subsequent cases have applied *Intel*'s injury requirement to claims based on the copying of electronic files or information. (See *Capitol Audio*, *supra*, 980 F.Supp.2d at 1156, 1160 [online publisher failed to state trespass-to-chattels claim against defendant who made and distributed unauthorized copies of publisher's electronic documents on publisher's website, where publisher failed to allege actionable interference with property under *Intel*, viz., interference causing damage or disruption (citing *Intel*, at 1357)]; *Vertkin*, *supra*, 2007 WL 4287512, at *1, *3 [plaintiff failed to state trespass-to-chattels claim against defendant who obtained personal information from plaintiff's computers by means of secretly installed programs, where plaintiff "failed to allege that her computers were impaired as to their condition or quality or that she was unable to use these computers for a substantial period of time" (citing *Intel*, at 1357)]; *Hiossen, Inc. v. Kim* (C.D.Cal., Aug. 17, 2016, No. CV1601579SJOMRWX) 2016 WL 10987365, at *1-*3, *10-*11 (*Hiossen*) [corporation failed to state trespass-to-chattels claim against former employee and competitor, where former employee copied confidential information from password-protected customer accounts on corporation's website, and used information to competitor's advantage, but plaintiff failed to allege damage or disruption to computer system (citing *Intel*, at 1356)].) Appellants fail to address any of these cases, though all are cited in respondents' brief on appeal, and two -- *Capitol Audio* and *Vertkin* -- were cited

16

in the trial court's ruling.  We conclude the court properly applied *Intel* in sustaining respondents' demurrers to appellants' trespass-to-chattels claim.

Even had *Intel* not required appellants to allege damage or disruption to the HQSU system, we would conclude the demurrers were properly sustained, because appellants failed to allege any actionable injury to the copied files or their asserted property interests therein.  Appellants conceded the files had not been corrupted, and their own access to the files had not been impaired.  Because the copying did not affect the files or appellants' ability to use them, it caused no actionable injury to their asserted property interests.  (See *123 Los Robles LLC v.* Metzler (C.D.Cal. Aug. 14, 2017, No. 2:17-CV-00392-RGK-SK) 2017 U.S.Dist.LEXIS 223232 (*Los Robles*), at *1, *12 [LLC failed to state trespass-to-chattels claim against member who copied and used confidential information from financial records on LLC's bank's computers, where information "remained unaltered and available to [LLC] on the bank's computers"]; cf. *Intel*, *supra*, 30 Cal.4th at 1348 [disruption caused by contents of unauthorized emails was not actionable as trespass to chattels because it was "an injury entirely separate from, and not directly affecting, the possession or value of personal property"].)

We reject appellants' reliance on their interests in privacy and confidentiality.  As noted, *Intel* implied that trespass to chattels would not lie to protect interests in privacy.  (See *Intel*, *supra*, 30 Cal.4th at 1361-1362 ["the

17

contents of a telephone communication may cause a variety of injuries and may be the basis for a variety of tort actions (e.g., . . . invasion of privacy), but the injuries are not to an interest in property, . . . and the appropriate tort is not trespass"]; *id.* at 1347 [analogizing Intel's loss of productivity, which was not actionable as trespass to chattels, to loss of privacy caused by intrusive telephone call].) Consistent with *Intel*'s implication, subsequent cases have rejected trespass-to-chattels claims without regard to asserted violations of the plaintiffs' privacy interests. (See *Los Robles*, *supra*, 2017 U.S.Dist.LEXIS at *12 ["Plaintiff's interest in the confidentiality of its financial information is not the type of possessory interest protected by the tort of trespass to chattels"]; *In re iPhone Application Litigation* (N.D. Cal. 2012) 844 F.Supp.2d 1040, 1048-1051, 1069 [plaintiffs failed to state trespass-to-chattels claim against companies that allegedly violated plaintiffs' privacy rights by allowing third-party apps to collect and use confidential information from plaintiffs' mobile devices]; *Vertkin*, *supra*, 2007 WL 4287512, at *3-*4 [plaintiff failed to state trespass-to-chattels claim against defendant who obtained personal information from plaintiff's computers by means of secretly installed programs, even though plaintiff adequately stated invasion-of-privacy claim on same allegations]; cf. *Hiossen*, *supra*, 2016 WL 10987365, at *11 [corporation's "'financial injury'" resulting from former employee's copying confidential information and using it to competitor's advantage was not actionable as trespass to chattels].)

Contrary to appellants' contentions, the "merger doctrine" does not establish that their privacy interests were merged with their asserted property, much less allow them to convert privacy harms into property harms. The merger doctrine is merely an exception to the traditional rule that intangible property cannot be the subject of conversion; it recognizes conversion of intangible property, such as stock, where the plaintiff's intangible *property* interests are merged with a document, such as a stock certificate. (See Gaab & Reese, Cal. Practice Guide: Civil Procedure Before Trial, Claims and Defenses (The Rutter Group 2021) Ch. 12(II)-B ¶¶ 12:109-12:110.) Because the traditional rule has been eroded or rejected, the merger doctrine, as an exception to the rule, now has little or no significance. (See *id.* ¶ 12:111; Thomas et al., Cal. Civil Practice: Torts (2021) § 15:4.) Here, at most, the doctrine could support appellants' position that they had cognizable property interests in the electronic files (an issue we need not address). The doctrine could not establish that such asserted property interests were *injured*.

Appellants have not cited -- and we have not found -- any authority supporting their reliance on privacy interests as a basis for their claim of trespass to chattels. Instead, appellants attempt to support their claim by misrepresenting a number of federal cases. For instance, appellants suggest that in *TransUnion LLC v. Ramirez* (2021) 594 U.S. __ [141 S.Ct. 2190], in which the Supreme Court held that certain members of a plaintiff class had Article III standing to bring a claim in federal court (*id.* at

2208-2209), the court relied on the defendant's dissemination of confidential information about the class members, harming their interests in privacy. In fact, the court's holding was based on the defendant's dissemination of *defamatory* information about the class members, causing harm to their *reputation*. (See *id.* at 2200, 2209 [class members suffered concrete "reputational harm" when labeled as potential terrorists, drug traffickers, or serious criminals in credit reports disseminated by defendant].) The court's holding is immaterial here, because it concerned the injury-in-fact requirement of Article III standing, which differs from the injury element of a trespass-to-chattels claim under California law. (See *In re iPhone Application Litigation*, *supra*, 844 F.Supp.2d at 1053-1055, 1069 [concluding plaintiffs alleged sufficient injury in fact to establish Article III standing, but dismissing trespass-to-chattels claim on the merits for failure to allege actionable injury].) Indeed, *Intel* implied that reputational harm -- the injury in fact in *TransUnion* -- would not be actionable as trespass to chattels. (See *Intel*, *supra*, 30 Cal.4th at 1359 ["While unwelcome communications, electronic or otherwise, can cause a variety of injuries to economic relations, *reputation* and emotions, those interests are protected by other branches of tort law" (italics added)].) As noted, *Intel* implied the same concerning harm to privacy interests.

Appellants also misrepresent *United States v. Ackerman* (10th Cir. 2016) 831 F.3d 1292, a child-pornography prosecution in which the Tenth Circuit held,

20

contrary to a district court's ruling on the defendant's motion to suppress evidence, that a government actor's opening and examining the defendant's email constituted a search within the meaning of the Fourth Amendment. (*Id.* at 1294-1295, 1308-1309.) Appellants assert the Tenth Circuit determined the unauthorized viewing of the email "injured the plaintiff [*sic*] by violating his Fourth Amendment rights," in a manner that "would be the proper subject of a trespass to chattels claim." In fact, the court discussed trespass to chattels only in explaining that the Fourth Amendment protects even dignitary interests in personal property -- as trespass-to-chattels doctrine did "at the time of the founding," before adoption of the modern requirement for actual injury. (*Id.* at 1307-1308; see also *Intel*, *supra*, 30 Cal.4th at 1352 ["modern day trespass to chattels differs both from the original English writ and from the action for trespass to land: ' . . . the dignitary interest in the inviolability of chattels, unlike that as to land, is not sufficiently important to . . . [warrant liability] in the absence of any actual damage'" (quoting Prosser & Keeton, Torts (5th ed. 1984) § 14, p. 87) (italics omitted)].)

Finally, appellants misrepresent *Synopsys, Inc. v. Ubiquiti Networks, Inc.* (N.D. Cal. 2018) 313 F.Supp.3d 1056. There, the plaintiff used anti-piracy software, secretly embedded into other software it knew the defendants would download, to collect data from the defendants' computers. (*Id.* at 1063-1065.) One defendant filed a trespass-to-chattels counterclaim, which the district court dismissed,

21

stating: "To the extent defendants base their trespass claims on the accessing of their systems by the anti-piracy software, they must *but have not* alleged facts showing that access *impaired* the intended functioning of defendants' systems. And to the extent that defendants base their trespass claim on the anti-piracy software's securing of and use of defendants' data, that common law claim would be preempted by [California's Uniform Trade Secrets Act]." (*Id.* at 1080.) Contrary to appellants' representations, the court neither "explicitly" recognized appellants' theory of liability, nor suggested in dictum that the trespass-to-chattels counterclaim would have had merit absent preemption.[5]

In sum, we conclude the trial court properly sustained respondents' demurrers to appellants' trespass-to-chattels claim, because appellants failed to allege any actionable injury to a property interest, whether in the HQSU system or in the files copied from it. In response to appellants' unfounded warnings that affirmance will leave future victims of hacking without any effective remedy, we emphasize that our holding concerns only appellants' attempt to plead the tort of trespass to chattels, an "'occasional'" remedy for minor interferences with property.

---

[5] Appellants' reliance in their reply and at oral argument on *U.S. v. Bohonus* (9th Cir. 1980) 628 F.2d 1167 is misplaced, as that case concerned an interpretation of the federal mail-fraud statute, not any common law tort, much less trespass to chattels under California law. (*Id.* at 1170-1172.)

(*Intel*, *supra*, 30 Cal.4th at 1351.)  In light of appellants'
declining to amend their complaint, we express no opinion
whether they might have adequately pled other causes of
action -- e.g., for violations of the Comprehensive Computer
Data Access and Fraud Act (CCDAFA) (Pen. Code, § 502), or
for the tort of invasion of privacy.[6]  (Cf. *Hiossen*, *supra*, 2016
WL 10987365, at *5-*6, *8-*11 [allegations that defendant
copied and used confidential information on corporation's
website failed to state trespass-to-chattels claim, but
adequately stated claims for violations of CCDAFA and
other statutes]; *Vertkin*, *supra*, 2007 WL 4287512, at *3-*4
[allegations that defendant obtained personal information
from plaintiff's computers failed to state trespass-to-chattels
claim, but adequately stated invasion-of-privacy claim].)
Having abandoned a privacy claim during their federal
litigation, appellants effectively attempted, both in the trial
court and on appeal, to repackage an alleged invasion of
privacy as a trespass to chattels.  Because appellants failed
to plead facts satisfying the latter tort's element of injury to
a property interest, the trial court properly sustained
respondents' demurrers.

---

[6]     Appearing to contradict their own warnings that similarly
situated plaintiffs will lack any remedy other than trespass to
chattels, appellants assert that their allegations satisfied the
criteria for an invasion-of-privacy claim.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.